[Crim. Ext. No. 76-198. Second Dist., Div. Four. Oct. 7, 1976.]

THE PEOPLE, Plaintiff and Appellant, v.
ELLIOTT A. GOTTFURCHT, Defendant and Respondent.

**COUNSEL**

Burt Pines, City Attorney, and Ward G. McConnell, Deputy City Attorney, for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Thomas R. Sheppard, Laurence K. Gould, Jr., and Davis H. von Wittenberg for Defendant and Respondent.

Weisman & Dreisen, David P. Kassoy, Jules L. Kabat, Greenberg & Glusker, Arthur N. Greenberg, Garret L. Hanken, Roberts, Carmack, Johnson & Harmer and Jack Earle Roberts as Amici Curiae.

## OPINION.

FILES, P. J.—The People appeal from an order of the municipal court, dismissing a criminal prosecution after an order sustaining a demurrer to the complaint. After the appeal had been heard and decided in the appellate department of the superior court we ordered it transferred here pursuant to rule 62 (a), California Rules of Court, to settle an important question of law.

■ At the time the complaint was filed, defendant was the operator of the "Carriage House," a hotel located in the "R5" Multiple Dwelling Zone in the City of Los Angeles. The complaint charged that defendant had permitted certain businesses, including a bar and restaurant, photo service, and art gallery, to be maintained and conducted at the hotel, not incidental to the hotel nor as a service only to the persons living therein, in violation of subdivision 2 of subdivision A of section 12.12 of the Los Angeles Municipal Code.[1]

The theory urged by the defendant, and relied upon by the trial court, is that this ordinance is an illegal and unconstitutional restriction on the individual rights of prospective patrons of the kind of hotel here in question. For the reasons set forth below, we reject that theory. As we shall point out, the ordinance before us is not a restriction on the rights—constitutional or otherwise—of individual patrons; it is concerned only with the use to which an owner may put his real property.

The ordinance which defendant is accused of violating is a zoning ordinance limiting the kind of business which he may conduct. Zoning ordinances, as such, have long been sustained as legitimate exercise of

---

[1]Section 12.12 of the Los Angeles Municipal Code provides in part as follows:

"The following regulations shall apply in the 'R5' Multiple Dwelling Zone:

"A. USE—No building, structure or land shall be used and no building or structure shall be erected, structurally altered, enlarged, or maintained, except for the following uses, and, when a 'Supplemental Use District' is created by the provisions of Article 3 of this Chapter, for such uses as may be permitted therein:

"1. Any use permitted in the 'R4' Multiple Dwelling Zone.

"2. Hotels or apartment hotels (including guest cottages), in which incidental business may be conducted, but only as a service to persons living therein, and provided such business is conducted within the main building, the entrance to the business is from the inside of the building, and no sign advertising such business is visible from outside the building.

" . . . ."

the police power. (See *Lockard* v. *City of Los Angeles* (1949) 33 Cal.2d 453, 460 [202 P.2d 38, 7 A.L.R.2d 990].) The business allowed on defendant's property is that of a hotel or apartment hotel, which may include "incidental business" conducted "only as a service to persons living therein." This description of the permissible use of the premises is further defined by the provisions that the incidental business "is conducted within the main building, the entrance to the business is from the inside of the building, and no sign advertising such business is visible from outside the building."

The limitations in this zoning ordinance have to do with how the defendant holds himself out to the public, and not which members of the public may enter the premises to avail themselves of the goods or services offered. It is to be anticipated that some persons who are not hotel guests may enter the premises for the purpose of patronizing the "incidental" business, as for example to eat a meal or purchase candy or tobacco. There is nothing in this ordinance which would authorize the defendant to refuse service to such persons or require him to ascertain whether or not they were or intended to become registered guests of the hotel.

There is a clear distinction between a small coffee shop designed and equipped to serve the number of hotel guests who may reasonably be expected to eat breakfast there, and a banquet room which the proprietor is offering to reserve for wedding receptions or service club luncheons. There may well be business activities which fall between the extremes and thus are less easily classified. But this zoning ordinance, like many others which list the kinds of activities which are permitted in a particular zone, is readily interpreted when viewed in the light of the purpose of the zoning plan.

We point out that the ordinance, and the complaint, refer to the conduct of a "business." This refers to operations which constitute a regular course of business, and not the mere casual performance of a service. In the context of this ordinance, dealing with hotels and apartment hotels, the word "business" implies a regular course of actions, directed to, and intended to attract, the public at large. The

character of the business will be identified by such features as the design and location of the facility within the premises, size in relation to the size of the hotel, the type of goods and services offered, and the manner and extent to which it is advertised. The existence of some casual patronage by nonhotel guests would not, by itself, constitute the violation charged.

The complaint before us properly charges a violation of the ordinance. The true character of the business conducted by defendant must be determined as a factual matter at the trial.

The order of dismissal is reversed.

Kingsley, J., concurred.

**JEFFERSON (Bernard), J.**—I dissent.

The majority reverses the trial court's order of dismissal of a criminal complaint against defendant on the ground that the ordinance which forms the basis of the prosecution is subject to a reasonable and constitutional interpretation, contrary to the views of the trial court.

The question at issue involves the validity and meaning of section 12.12 of the Los Angeles Municipal Code, which permits a hotel to be operated in an R-5 multiple dwelling zone, but limits the operation of a hotel to one "in which incidental business may be conducted, but *only as a service to persons living therein,* and provided such business is conducted within the main building, the entrance to the business is from the inside of the building, and no sign advertising such business is visible from outside the building. . . ." (Italics added.)

Defendant and amici curiae attack the ordinance as being illegal and unconstitutional on a number of grounds. The majority rejects the attack and upholds the ordinance by making what it considers to be a reasonable construction and interpretation of the ordinance. It is my view that the ordinance is not reasonably subject to the interpretation made by the majority, and that the majority's interpretation is simply erroneous and untenable. It is my view that the only reasonable interpretation of the language of the ordinance is that any incidental

business, such as a restaurant, being conducted in defendant's hotel, can render service *only* to persons living therein and that the ordinance is invalid and unconstitutional.

The majority stresses the fact that this is a zoning ordinance concerned only with the use to which an owner may put his real property, and simply limits the kind of business which he may conduct. The majority opinion states that "[t]he limitations in this zoning ordinance have to do with how defendant holds himself out to the public, *and not which members of the public may enter the premises to avail themselves of the goods or services offered.*" (Italics added.) The majority thus conveniently *ignores* the specific language of the ordinance that the incidental business may be conducted, "*but only as a service to persons living therein.*"

By ignoring this essential term of the ordinance, the majority is able to make the erroneous conclusion that the ordinance is not a restriction on the rights—constitutional or otherwise—of individual patrons.

By ignoring this essential provision of the ordinance, the majority concludes that the ordinance only limits how the defendant holds himself out to the public and does not, therefore, preclude nonpatrons from coming to the hotel to partake of the services offered by the incidental businesses such as the restaurant. By ignoring an essential provision of the ordinance, the majority concludes that "[t]here is nothing in this ordinance which would authorize the defendant to refuse service to such persons or require him to ascertain whether or not they were or intended to become registered guests of the hotel." This ignoring by the majority of an essential provision of the ordinance produces an interpretation of the ordinance that is arbitrary, capricious and represents a complete emasculation of the true intent of the ordinance—to preclude the hotel proprietor from conducting an incidental business such as a restaurant which would serve the public as well as serve the registered guests.

I see no basis for construing the words of this ordinance in any manner other than the plain and ordinary meaning of the words used. How the majority is able to construe a requirement that a restaurant be conducted

"only as a service to persons living" in the hotel, to permit service to "some persons who are not hotel guests [who] may enter the premises for the purpose of patronizing the 'incidental' business, as for example to eat a meal or purchase candy or tobacco," is beyond my comprehension.

The majority states that, in its reference to the conduct of a "business," the ordinance means the conduct of operations which constitute a regular course of business, and not the mere casual performance of a service. The majority defines the word "business," "[i]n the context of this ordinance," to mean "a regular course of actions, directed to, and intended to attract, the public at large." This constitutes a meaningless inconsistency. If the ordinance defines "business" to mean a restaurant "directed to, and intended to attract, the public at large," what is the effect, then, of the language of the ordinance that requires the hotel proprietor to conduct such a "business," "but *only* as a service to persons living therein"? (Italics added.)

The majority's view reduces the ordinance to a certainty of ambiguity and contradiction.

The majority's opinion speaks about the differences between a coffee shop, which the majority concludes, apparently, would not violate the ordinance, and a banquet room for wedding receptions or service club luncheons, which would. But the majority doesn't tell us in what category an eating place located in defendant's hotel that is designated a "restaurant" or a "dining room," falls. The majority simply concludes that "[t]he true character of the business conducted by defendant must be determined as a factual matter at the trial."

The majority's decision places the defendant hotel proprietor in an impossible situation insofar as trying to determine whether his coffee shop, or his coffee shop and dining room, or his restaurant operation is such as to subject him to criminal prosecution. No standard is fixed by the majority for a hotel proprietor to determine when his "incidental *business*," be it a coffee shop, restaurant, art gallery, or bar and restaurant—as "business" is defined by the majority—complies with the requirement of the ordinance that such business must be conducted *"only as a service to persons living therein."*

It is clearly conceivable that, because of the high quality of the food and service, defendant's hotel-coffee shop or restaurant could attract large numbers of the general public without any advertising program being conducted by defendant. Under such circumstances, the City could logically contend that defendant was *not* conducting his food-service "business" *only* as a service to persons living in the hotel, and, therefore, was subject to criminal prosecution. Without any objective standard to govern a hotel proprietor's actions, the ordinance, under the majority's interpretation, can easily result in criminal prosecutions for a variety of unspecified acts. The ordinance, therefore, should be deemed too vague and ambiguous to withstand the test of constitutionality.

The ordinance as interpreted by the majority comes within the doctrine that if a criminal statute "fails to state definite criteria of guilt, the whole constitutes an unconstitutional denial of due process of law." (*In re Blaney* (1947) 30 Cal.2d 643, 656 [184 P.2d 892]; see *Palmer* v. *City of Euclid* (1971) 402 U.S. 544 [29 L.Ed.2d 98, 91 S.Ct. 1563].)

Whether the ordinance be interpreted as the majority opinion dictates, or as I think it should be interpreted, I consider defendant's contention to be sound that the ordinance is arbitrary and unreasonable. The argument advanced by the prosecution, although not mentioned in the majority opinion but apparently accepted as valid, that the ordinance has a legitimate police-power basis in the city's desire to lessen traffic in the particular zoning area is without merit.

It must be recognized that in the eyes of the public, a "hotel" signifies a business with incidental services such as restaurants, which are open to the public. This fact is a fact of such generalized knowledge and so universally known that it cannot reasonably be the subject of dispute. For this reason it is a fact which must be judicially noticed pursuant to Evidence Code section 451, subdivision (f). I know of no action which the defendant hotel proprietor may take to preclude wide-spread public visitation to his dining facilities unless he were to deliberately provide such poor food and service so that even the patrons of the hotel would decline to take advantage of the restaurant.

To require the defendant to so conduct his restaurant operations in an effort to deter the general public from using the facilities, while hotels

with restaurants situated in areas with different zoning are not placed under any such cloud, constitutes legislative action in violation of equal protection of the laws and the Unruh Civil Rights Act. (Civ. Code, § 51; see *In re Cox* (1970) 3 Cal.3d 205 [90 Cal.Rptr. 24, 474 P.2d 992].)

It is my view that the ordinance might not be subject to this discriminatory result if it simply provided for the physical arrangements of requiring location of the incidental business in the main building with an entrance solely from the inside of the building and with no sign advertising the business visible from the outside of the building.

I would sustain the trial court's order dismissing the criminal complaint.

A petition for a rehearing was denied October 27, 1976. Jefferson (Bernard), J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied December 2, 1976. McComb, J., did not participate therein. Mosk, J., and Clark, J., were of the opinion that the petition should be granted.